UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

**NOT FOR PUBLICATION**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | No. 08-01789 (CGM) |
| Plaintiff-Applicant, | SIPA LIQUIDATION |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and the Chapter 7 Estate of Bernard L. Madoff, | Adv. Pro. No. 11-02733 (CGM) |
| Plaintiff, | |
| v. | |
| NAIDOT & CO. and BESSEMER TRUST COMPANY, | |
| Defendants. | |

**MEMORANDUM DECISION DENYING DEFENDANTS'
MOTION TO DISMISS**

**A P P E A R A N C E S :**

*Special Counsel for Irving H. Picard, Trustee for the Substantively Consolidated SIPA
Liquidation of Bernard L. Madoff Investment Securities LLC and the Chapter 7 Estate of
Bernard L. Madoff*
WINDELS MARX LANE & MITTENDORF, LLP
156 West 56th Street
New York, NY 10019
By:    Howard L. Simon
        Kim M. Longo
        John J. Tepedino

1

*Attorneys for Defendants*
PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, NY 10036
By:     James V. Masella, III

**CECELIA G. MORRIS**
**UNITED STATES BANKRUPTCY JUDGE**

Pending before the Court is Defendants', Bessemer Trust Company ("BTC") and Naidot & Co. ("Naidot"), motion to dismiss the complaint of Irving Picard, the trustee ("Trustee") for the liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS") seeking to recover subsequent transfers of BLMIS customer property.  BTC was not named as a defendant in the original complaint filed in 2011.  (Compl. ¶ 2, ECF No. 1).  BTC alone argues that dismissal is proper because the statute of limitations has expired and the addition of BTC as a defendant does not relate back to the original complaint under Rule 15(c).  Together, Defendants BTC and Naidot seek dismissal due to the safe harbor, mere conduit, and good faith, for value affirmative defenses. For the reasons set forth herein, the joint motion to dismiss is denied in its entirety.

## <u>Jurisdiction</u>

This is an adversary proceeding commenced in this court, in which the main underlying SIPA proceeding, Adv. Pro. No. 08-01789 (CGM) ("SIPA Proceeding"), is pending. The SIPA Proceeding was originally brought in the United States District Court for the Southern District of New York ("District Court") as *Securities Exchange Commission v. Bernard L. Madoff Investment Securities LLC et al.*, No. 08-CV-10791, and has been referred to this Court. This Court has jurisdiction over this adversary proceeding under 28 U.S.C. § 1334(b) and (e)(1), and 15 U.S.C. § 78eee(b)(2)(A) and (b)(4).

This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (F), (H) and (O). This Court has subject matter jurisdiction over these adversary proceedings pursuant to 28 U.S.C. §§ 1334(b) and 157(a), the District Court's Standing Order of Reference, dated July 10, 1984, and the Amended Standing Order of Reference, dated January 31, 2012.  In addition, the District Court removed the SIPA liquidation to this Court pursuant to SIPA § 78eee(b)(4), (*see* Order, Civ. 08-01789 (Bankr. S.D.N.Y. Dec. 15, 2008), at ¶ IX (ECF No. 1)), and this Court has jurisdiction under the latter provision.  Personal jurisdiction has not been contested by the Defendants.

## Background

The Court assumes familiarity with the background of the BLMIS Ponzi scheme and its SIPA Proceeding.  *See Picard v. Citibank, N.A.* (*In re BLMIS*), 12 F.4th 171, 178-83 (2d Cir. 2021), *cert. denied sub nom. Citibank, N.A. v. Picard*, 142 S. Ct. 1209, 212 L. Ed. 2d 217 (2022).

This adversary proceeding was filed on September 22, 2011 as part of the Trustee's continuing efforts to recover BLMIS customer property against subsequent transferees.  (Compl., 11-02733-cgm, ECF No. 1).  The Trustee filed an amended complaint ("Amended Complaint") on August 5, 2022, adding BTC as a co-defendant.  (*See* Am. Compl., ECF No. 100).  The Trustee seeks to recover at least $12,654,907 in subsequent transfers of BLMIS customer property from Defendants.  (*Id.* ¶ 2).

Defendants allegedly received the subsequent transfers though the redemption of shares in BLMIS "feeder fund" Fairfield Sentry Limited ("Fairfield Sentry").  (*Id.*).  Defendants invested in BLMIS through Fairfield Sentry.  (*Id.*).  Fairfield is considered a "feeder fund" because the Trustee has alleged that Fairfield Sentry invested a large majority (no less than 95%)

of its assets with BLMIS.  (*See* Fairfield Compl. ¶ 89, *Picard v. Fairfield Inv. Fund Ltd.*, Adv.

Pro. No. 09-1239 ECF No. 286 (the "Fairfield Complaint")).

Defendant BTC is a state-chartered private bank and depository trust company that is the

founding entity of a group of companies referred to as "Bessemer Trust."  (*Id.* ¶ 54).  Bessemer

Trust provides investment management and other financial services to high net-worth

individuals.  (*Id.* ¶ 3).  The Trustee has alleged that Bessemer Trust describes itself as a

sophisticated office that provides "best-in-class expertise across investment management, wealth

planning, and family office services."  (*Id.* ¶ 55).  Bessemer Trust companies are organized under

a holding company parent, The Bessemer Group, Inc., which has its principal place of business

at the same New Jersey address as BTC and Naidot.  (*Id.* ¶ 56).

Defendant Naidot is a New Jersey partnership which has the "limited purpose of having

registered, in the name of the said partnership, stock, bonds, notes, and other securities and

property from time to time held by [BTC] in various fiduciary capacities."  (*Id.* ¶ 57).  The

Trustee has alleged that BTC registered its Fairfield Sentry shares in Naidot's name.  (*Id.*).  The

Trustee alleges that during the relevant period, Naidot and BTC shared a corporate address and

Naidot's partners were solely or predominantly executives of Bessemer Trust, including group

Chief Financial Officer John G. MacDonald, Treasurer Daniel Murray and Corporate Controller

Richard T. Murtagh, who were also officers of BTC.  (*Id*. ¶ 59).  The Trustee alleges that Naidot

did not have any employees that were not involved with BTC or other Bessemer Trust entities.

(*Id.* ¶ 59).  BTC first invested in Fairfield Sentry in or around 1992. BTC registered its shares in

Naidot's name.  (*Id.* ¶ 4.).  The Trustee alleges that Naidot was formed for the purpose of acting

as the nominee for securities and other investments held by BTC.  (*Id.*).

Madoff was arrested on December 11, 2008 for criminal violations of federal securities laws. *(Id.* ¶ 5). Following BLMIS' collapse, the Trustee filed an adversary proceeding against Fairfield Sentry and other Fairfield Greenwich Group defendants to recover approximately $3 billion worth of fraudulent transfers of customer property from BLMIS to Fairfield Sentry. *(Id.* ¶ 66). In 2011, this Court approved a settlement between the Trustee and Fairfield Sentry. (Consent J., 09-01239-cgm, ECF No. 109). Fairfield Sentry transferred a portion of the initial transfers to Defendants here. (Am. Compl. ¶ 72, ECF No. 100). The Trustee now seeks to recover the subsequent transfers from Fairfield Sentry to Defendants.

In its motion to dismiss, BTC argues that its addition as a defendant violates the statute of limitations because it was not named as a defendant in the Original Complaint. (Mem. L. 2, ECF No. 103). Both BTC and Naidot raise the following affirmative defenses: safe harbor, mere conduit, and good faith, for value.

**Discussion**

## I.    Statute of Limitations

The Trustee's Amended Complaint seeks to add Bessemer Trust Company ("BTC") as a defendant. (Am. Compl. ¶ 2, ECF No. 100). When the Trustee initiated this adversary proceeding, he only named Naidot in the original complaint ("Original Complaint"). (Compl. ¶ 2). BTC moves to dismiss the Complaint for violating the statute of limitations because the Original Complaint did not name BTC as a party. (Mem. L. 2, ECF No. 103). BTC argues that the Trustee's attempt to recover subsequent transfers from BTC does not "relate back" to the initial complaint and is time-barred. (Mem. L. 3, ECF No. 103). The Trustee argues that the Amended Complaint is timely because it meets the standard for relation back under Federal Rule

of Civil Procedure 15(c).  (Opp'n 5, ECF No. 106).  The Court must determine whether the Amended Complaint relates back to the initial complaint pursuant to Rule 15(c).

Section 550(f) of the bankruptcy code provides "[a]n action or proceeding under this section may not be commenced after the earlier of: one year after the avoidance of the transfer on account of which recovery under this section is sought [BLMIS' transfer to Fairfield Sentry]; or the time the case is closed or dismissed."  11 U.S.C. § 550(f).  Rule 15(c) "permits an amended complaint that adds a defendant to relate back to the date of the original pleading."  Fed. R. Civ. P. 15(c)(1).  "[A]n amendment to a pleading relates back to the date of the original pleading when . . . the amendment asserts a claim or defense that arose out of the same conduct, transaction, or occurrence set out—or attempted to be set out—in the original complaint."  Fed. R. Civ. P. 15(c)(1)(B).  Rule 15(c) does not set a high bar for relation back, so long as the claims asserted in the Amended Complaint "share a reasonable measure of common ground with the allegations of the original pleading."  *Picard v. Madoff (In re Bernard L. Madoff Inv. Sec. LLC)*, 468 B.R. 620, 633 (Bankr. S.D.N.Y. 2012) (quoting *Silverman v. K.E.R.U. Realty Corp. (In re Allou Distribs., Inc.*), 379 B.R. 5, 27 (Bankr. E.D.N.Y. 2007)).

The United States Court of Appeals for the Second Circuit has explained that Rule 15(c) should be "liberally construed."  *Siegel v. Converters Transp., Inc.*, 714 F.2d 213, 216 (2d Cir. 1983).  This gives "maximum opportunity for each claim to be decided on its merits rather than on procedural technicalities."  *Id.* at 217.  An amended pleading may be found to "relate back" to the original pleading when: (i) it asserts claims arising from the same "conduct, transaction, or occurrence" as those asserted in the original pleading; (ii) the new party was on notice of the pending action pursuant to Fed. R. Civ. P. 4(m) such that it will not be "prejudiced in defending on the merits;" and (iii) the new party "knew or should have known that the action would have

6

been brought against it, but for a mistake concerning the proper party's identity." Fed. R. Civ. P.

15(c)(1)(B).  The inquiry here focuses on whether the facts pleaded in the Original Complaint

provide "adequate notice" to the opposing party of the matters raised in the Amended Complaint,

which is the addition of BTC in the case at hand.  *Picard*, 468 B.R. at 633 (quoting *Buchwald*

*Capital Advisors LLC v. J.P. Morgan Chase Bank, N.A.* (*In re Fabrikant & Sons, Inc.*), 447 B.R.

170, 181 (Bankr. S.D.N.Y. 2011)).

### A.  Arises out of the same conduct, transaction, occurrence

The Original Complaint, filed in September 2011, sought to recover approximately

$13,654,907 in subsequent transfers Fairfield Sentry made to Naidot.  (Compl. ¶ 2, ECF No. 1).

BTC first invested in Fairfield Sentry in 1992, registering its shares in the name of Naidot, a

partnership whose members were Bessemer Trust executives, including officers of BTC.  (Am.

Compl. ¶ 4, ECF No. 100).  Naidot's purpose was to act as nominee for securities and other

investments held by BTC.  (*Id.*).  The Amended Complaint alleges that Naidot "has the limited

purpose of having registered, in the name of the said partnership, stock, bonds, notes and other

securities and property from time to time held by [BTC] in various fiduciary capacities." (*Id.* ¶

57).  BTC registered its Fairfield Sentry shares in Naidot's name.  (*Id.*)  In the Amended

Complaint, the Trustee seeks to recover at least $12,654,907 in subsequent transfers of BLMIS

customer property to Naidot and BTC.  (*Id.* ¶ 2).  In his Original Complaint, the Trustee included

a $1,000,000 subsequent transfer on February 14, 2003 that he did not include in the Amended

Complaint.  (Compl. Ex. C, ECF No. 1); (Am. Compl. Ex. C, ECF No. 100).

All subsequent transfers the Trustee seeks to recover in the Amended Complaint were

initially identified in the Original Complaint.  (*Id.*); *Randall's Island Family Golf Ctrs. v.*

*Acushnet Co. (In Re Randall's Island Family Golf Ctrs.),* 2002 Bankr. LEXIS 1247, at *7

(Bankr. S.D.N.Y. Nov. 8, 2002) (explaining that the Defendant could not dispute that the claim arose out of the same conduct, transaction, or occurrence because addition of the new party involved the same transfers as the original claim).  This includes a $1,000,000 transfer on June 16, 2003, a $5,900,000 transfer on February 18, 2004, a $2,000,000 transfer on June 24, 2005, and a $3,754,907 transfer on October 14, 2005.  (Compl. Ex. C, ECF No. 1); (Am. Compl. Ex. C, ECF No. 100).  Given that all transactions in the Amended Complaint were included in the Original Complaint, the addition of BTC as a defendant arises out of the same transactions identified in the Original Complaint.

### B.  On notice such that it would not be prejudiced in defending on the merits

"To satisfy the notice requirement under Rule 15(c)(1)(C)(i), a plaintiff may plead that two defendants are so 'closely related in their business activities or linked in their corporate structure' as to have an 'identity of interest[.]'" *Hahn v. Off. & Pro. Emp. Int'l Union, AFL-CIO*, 107 F. Supp. 3d 379, 384 (S.D.N.Y. 2015) (quoting *In re Allbrand Appliance & Television Co., Inc.*, 875 F.2d 1021, 1025 (2d Cir. 1989)). When the defendants' business activities are so closely related, the commencement of an action against one party is understood to give notice to the other party.  *Id.* This principle has been applied when the parties are "a parent corporation and its wholly owned subsidiary, two related corporations whose officers, directors, or shareholders are substantially identical and who have similar names or share office space . . . ." *Hernandez Jimenez v. Calero Toledo*, 604 F.2d 99, 102-03 (1st Cir. 1979).

Imputed notice is demonstrated where two entities have shared officers and the two entities are closely related in their business operations.  *In re Enron Creditors Recovery Corp.*, 370 B.R. 90, 97 (Bankr. S.D.N.Y. 2007); *In re Enron Corp.*, 298 B.R. 513, 523 (Bankr. S.D.N.Y. 2003).  The Amended Complaint states that Naidot and BTC shared a corporate address and

8

Naidot's partners were solely or predominantly executives of Bessemer Trust, who were also partners of BTC during the relevant period.  (Am. Compl. ¶ 58, ECF No. 100).  This included the Chief Financial Officer, Treasurer, and Corporate Controller.  (*Id.*).

Naidot's stated purpose in state filings was to serve as nominee for certain investments by BTC.  (*Id.* ¶ 4).  The Trustee alleges that the two entities shared a New Jersey corporate address, and Naidot's partners were solely or predominantly Bessemer Trust executives, including officers of BTC.  (*Id.* ¶¶ 57–59).  Additionally, the Trustee alleged in the Amended Complaint that he has found no evidence that Naidot had any personnel that was not associated with BTC or Bessemer Trust entities.  (*Id.* ¶ 59).  Given that the two entities' business operations were deeply intertwined, the two entities shared a corporate address, and the officers of BTC were also in leadership positions within Naidot during the relevant time, the Court finds that Amended Complaint contains sufficient allegations to show that Naidot had sufficient notice.

### C.  Knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

BTC argues that the Trustee knew of BTC and simply chose not to sue them.  (Mem. L. 5, ECF No. 103).  BTC supports this assertion by arguing that the Trustee identified BTC and explained BTC's relationship with Naidot in the Original Complaint.  (*Id.*).  BTC also argues that it could not have known that the Trustee made a mistake, and therefore could not have known that an action would have been brought against it.  (Mem. L. 5, ECF No. 103).  The Trustee argues that it is clear the intent was to sue the recipient of the subsequent transfers, which he mistakenly believed was only Naidot.  (Opp'n 9, ECF No. 106).  The Trustee states that he misunderstood BTC's relationship with Naidot and their roles with respect to Sentry investments.  (*Id.*).

The question under Rule 15(c)(1)(C)(ii) is not whether the Trustee knew of BTC as the proper defendant, but whether BTC knew or should have known that it would have been named as a defendant. *Krupski v. Costa Crociere S. p. A.,* 560 U.S. 538, 553-54 (2010). "The question under Rule 15(c)(1)(C)(ii) is what the prospective defendant reasonably should have understood about the plaintiff's intent in filing the original complaint against the first defendant." *Id.* at 548. Further, the fact that the Trustee had knowledge of BTC's existence at the time the Original Complaint was filed does not preclude him from making a mistake with respect to BTC's identity. *Id.* The Supreme Court's explanation of a mistake regarding the proper defendant's identity is directly applicable to the case at issue:

> A plaintiff may know that a prospective defendant—call him party A—exists, while erroneously believing him to have the status of party B. Similarly, a plaintiff may know generally what party A does while misunderstanding the roles that party A and party B played in the "conduct, transaction, or occurrence" giving rise to her claim. If the plaintiff sues party B instead of party A under these circumstances, she has made a "mistake concerning the proper party's identity" notwithstanding her knowledge of the existence of both parties. The only question under Rule 15(c)(1)(C)(ii), then, is whether party A knew or should have known that, absent some mistake, the action would have been brought against him.

*Id.* at 549. In the Original Complaint, the Trustee alleged that Naidot invested in Sentry *through* BTC. (Compl. ¶¶ 6, 21, ECF No. 1). The relationship is exactly the opposite, with BTC having invested in Fairfield Sentry through Naidot. (Opp'n 9, ECF No. 106). It is clear on the face of the Original Complaint that the Trustee was mistaken with respect to BTC's role in the investments with Fairfield Sentry.

It is reasonable to infer that BTC had knowledge, knew, or should have known that the Trustee would have brought an action against BTC but for his mistake. As described above, the leadership for BTC and Naidot were closely intertwined, including the Chief Financial Officer, Treasurer, and Corporate Controller. (Am. Compl. ¶ 58, ECF No. 100). Given the importance of these roles, and their inherent knowledge of the financial transactions for both Naidot and

10

BTC, BTC's partners should have reasonably understood that the Trustee would have included

BTC in the Original Complaint but for his misunderstanding.  When they received the complaint,

they likely knew BTC was the proper defendant in the issue at hand and the Trustee was suing

the wrong entity.  *See Leonard v. Parry*, 219 F.3d 25, 28 (1st Cir. 2000) (holding that the driver

of a vehicle involved in an accident knew or should have known that they were the proper

defendant when the complaint mistakenly named another individual as the driver).  Taking the

allegations as true, the Court finds that BTC knew or should have known that the action would

have been brought against it but for the Trustee's mistake.

## II.    12(b)(6) Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted

as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662,

678 (2009).  A claim is facially plausible when the "plaintiff pleads factual content that allows

the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." *Id.*  The plausibility standard requires "more than a sheer possibility" that the

defendant committed the misconduct. *Id.*  In deciding a motion to dismiss, the court must accept

all of the factual allegations in the complaint as true and determine whether they plausibly give

rise to an entitlement of relief. *Id.* at 679.  A well-pled complaint may proceed even if actual

proof of the facts is improbable and recovery is unlikely.  *Bell Atl. Corp. v. Twombly*, 550 U.S.

544, 556, 127 S. Ct. 1955, 1965 (2007).

In deciding the motion, "courts must consider the complaint in its entirety, as well as

other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in

particular, documents incorporated into the complaint by reference, and matters of which a court

may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007).

11

This includes exhibits or any statements or documents included as a reference with the complaint. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002).

Pursuant to 11 U.S.C.S. § 550, the trustee is entitled to recover avoided transfers of customer property from initial transferees as well as subsequent transferees of such initial transferees. "To plead a subsequent transfer claim, the Trustee must plead that the *initial* transfer is avoidable, and the defendant is a subsequent transferee of that initial transferee." *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC* (*In re Madoff*), 594 B.R. 167, 195 (Bankr. S.D.N.Y. 2018) (citing *Picard v. Legacy Capital Ltd.* (*In re BLMIS*), 548 B.R. 13, 36 (Bankr. S.D.N.Y. 2016)). "[Rule] 9(b) governs the portion of a claim to avoid an initial intentional transfer and [Rule] 8(a) governs the portion of a claim to recover the subsequent transfer." *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff)*, 594 B.R. 167, 195 (Bankr. S.D.N.Y. 2018) (citing *Sharp Int'l Corp. v. State St. Bank & Tr. Co., (In re Sharp Int'l Corp.*), 403 F.3d 43, 56 (2d Cir. 2005)). Pursuant to Rule 8(2)(a), the Trustee need only provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(2)(a).

## **Affirmative Defenses**

Defendants have raised the "mere conduit," "safe harbor," and "good faith, for value" defenses. Affirmative defenses may be raised in a motion to dismiss under Rule 12(b)(6) if the defense "appears on the face of the complaint." *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 74 (2d Cir. 1998). The motion may only be granted if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir. 2004). The plaintiff is entitled to all reasonable inferences from the facts alleged in the complaint. *Id.*

### I.    Mere Conduit

The mere conduit defense arises under the safe harbor provision of the bankruptcy code. 11 U.S.C. § 546(e).  Defendants raise the mere conduit defense in two different circumstances. Defendants first argue that they are mere conduits and therefore cannot be considered a transferee under Section 550(a).  (Mem. L. 8-9, ECF No. 103).  Alternatively, Defendants argue that if Nadiot and BTC are considered transferees, they are initial transferees because Fairfield Sentry was a mere conduit.  (*Id.* at 18-19).

The initial transfers the Trustee sought to avoid are the transfers of BLMIS customer property from BLMIS to Fairfield Sentry.  (Am. Compl. ¶ 66, ECF No. 100).  Once a transfer is avoided, the Trustee is entitled to recover BLMIS customer property from "any immediate or mediate transferee of such initial transferee."  11 U.S.C.S. § 550(a)(2).  The Trustee alleges that Defendants are subsequent transferees under § 550(a)(2), having received transfers of BLMIS customer property from Fairfield Sentry totaling at least $12,654,907.  (Am. Compl. ¶ 72, ECF No. 100).  Defendants bear the burden of proof of establishing their status as mere conduits rather than transferees.  *Enron Corp. v. J.P. Morgan Sec., Inc. (In re Enron Corp.)*, 361 B.R. 36, 49 (Bankr. S.D.N.Y. 2006) (citing *Alberts v. Arthur J. Gallagher & Co. (In re Greater Se. Cmty. Hosp. Corp. I)*, 341 B.R. 91, 99 (Bankr. D.D.C. 2006)).

### A.  Whether Naidot and BTC are Mere Conduits

Defendants argue that they are "mere conduits" and not subsequent transferees because a mere recipient of money or assets is not a transferee.  (Mem. L. 9, ECF No. 103).   Defendants argue that the trustee failed to allege that Naidot or BTC controlled the transfers.  (Mem. L. 10, ECF No. 103; Reply Mem. L. 12, ECF No. 109).  Defendants argue that it is clear on the face of the Amended Complaint that Naidot and BTC are mere conduits because the Trustee

acknowledges that the investments made through BTC were on behalf of its clients and not on its

own behalf.  (Mem. L. 12, ECF No. 103).  Thus, BTC argues, its customers invested in Fairfield

Sentry and BTC only held the investment "in various fiduciary capacities" on its customer's

behalf.  (*Id.* at 12-13).  Defendants argue that Naidot was a mere nominee holding the

investment.  (*Id.* at 13).  The Trustee alleges that the "Defendants are immediate or mediate

transferees of the subsequent transfers from Fairfield Sentry."  (Am. Compl. ¶ 79, ECF No. 100).

The Second Circuit has adopted the "dominion and control test," which requires that the

defendant exercises "dominion over the money or other asset" to be considered a transferee.

*Securities Investor Protection Corp. v. Stratton Oakmont, Inc.*, 234 B.R. 293, 313 (Bankr.

S.D.N.Y. 1999) (citing *Bonded Fin. Servs., Inc. v. Eur. Am. Bank*, 838 F.2d 890, 894 (7th Cir.

1988)).

It is not "beyond doubt" that the Defendants were mere conduits.  *Sec. Inv'r Prot. Corp.

v. Bernard L. Madoff Inv. Sec. LLC*, 2023 Bankr. LEXIS 26, at *20 (Bankr. S.D.N.Y. Jan. 6,

2023).  The Trustee has alleged that BTC invested in Fairfield Sentry directly and registered the

shares in Nadiot's name.  (Am. Compl. ¶ 4, ECF No. 100).  There is nothing in the Amended

Complaint that supports Defendants' assertion that BTC's customers invested directly in

Fairfield Sentry.  The portions of the Amended Complaint cited by Defendants as proving that

they are mere conduits are insufficient because they do not clearly establish whether Defendants

exercised control over the assets.  Therefore, there is insufficient information on the face of the

Amended Complaint to determine whether Naidot and BTC were mere conduits.  Defendants are

free to plead and prove otherwise at a later stage of litigation.

### B.  Whether Fairfield Sentry is a Mere Conduit

14

Defendants next argue that if BTC and Naidot are found to be transferees, they would be initial transferees because Fairfield Sentry was a mere conduit.  (Mem. L. 19, ECF No. 103). Defendants raise this argument because if Fairfield Sentry was a mere conduit and BTC and Naidot were initial transferees, Defendants could raise the safe harbor defense.  The Court previously held that "[t]he Trustee pleaded the avoidability of the initial transfer (from BLMIS to Fairfield Sentry) by adopting by reference the entirety of the complaint filed against Fairfield Sentry in adversary proceeding 09-1239."  *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 2022 Bankr. LEXIS 1978, at *15-16 (Bankr. S.D.N.Y. July 18, 2022).  "The district court has already found that adoption by reference of the entire Fairfield Complaint is proper." *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 2022 Bankr. LEXIS 1978, at *17 (Bankr. S.D.N.Y. July 18, 2022).

The Trustee adopted the entirety of the complaint filed against Fairfield Sentry ("Fairfield Complaint") in his Amended Complaint against Naidot and BTC.  (Am. Compl. ¶ 70, ECF No. 100).  In the Fairfield Complaint, the Trustee's allegations demonstrate that Fairfield Sentry exercised dominion and control over the funds. The Fairfield Complaint indicates that Fairfield Sentry opened their first account with BLMIS in November 1990 with a $4 million deposit. (Fairfield Compl. ¶ 89, ECF No. 286).  Fairfield Sentry opened a second account with BLMIS in 1992.  (*Id.* ¶ 90).  The accounts with BLMIS were held in Fairfield Sentry's name and not in the name of Fairfield Sentry's clients.  (*Id.* Ex. 1).  Fairfield Sentry, as an entity under Fairfield Greenwich Group, generated and collected fees through investment with BLMIS.  (*Id.* ¶¶ 1, 102). Fairfield Sentry was a customer of BLMIS, and the director of Fairfield Sentry raised investment capital for Fairfield Sentry, most of which was invested in BLMIS.  (*Id.* ¶¶ 88, 92, 102).  There are no allegations in the Amended Complaint that suggest Fairfield Sentry was a mere conduit.

15

To the contrary, the Trustee alleges that Fairfield Sentry, as an entity of Fairfield Greenwich Group, "fed more investment capital than any other [investment firm]" because of the benefits Fairfield Greenwich Group partners received from the BLMIS investments. (*Id.* ¶ 1). The Fairfield Complaint is replete with allegations of dominion and control.

## II.    Safe Harbor

Defendants raise the safe harbor defense under Section 546(e). Defendants argue that this Court should find that Section 546(e) applies to subsequent transferees as well as initial transferees. (Mem. L. 20–22, ECF No. 103). As discussed above, Defendants argue that Fairfield Sentry is a mere conduit and therefore they are initial transferees, and thus the safe harbor defense may apply. (*Id.* at 19). Defendants also argue that the safe harbor defense applies due to their subscription agreements with Fairfield Sentry. (*Id.* at 23).

Section 546(e) protects a transfer that is a "settlement payment … made by or to (or for the benefit of) a … financial institution [or] financial participant," or that is "made by or to (or for the benefit of) a … financial institution [or] financial participant … in connection with a securities contract." 11 U.S.C. § 546(e); *see also Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 2023 Bankr. LEXIS 26, at *22 (Bankr. S.D.N.Y. Jan. 6, 2023). The safe harbor defense does not apply to subsequent transfers because the Trustee is not "avoiding" a subsequent transfer. *Sec. Inv'r Prot. Corp.* at *31. "[H]e recovers the value of the avoided initial transfer from the subsequent transferee under 11 U.S.C. § 550(a), and the safe harbor does not refer to the recovery claims under section 550." *Id.* (quoting *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Secs. LLC (In re Madoff)*, 594 B.R. 167, 197 (Bankr. S.D.N.Y. 2018)). Where the initial transferee fails to raise a § 546(e) defense, as is the case here, the subsequent transferee may raise the defense against recovery of the funds. *Secs. Investor Prot. Corp. v.*

16

*Bernard L. Madoff Inv. Secs. LLC*, 2021 Bankr. LEXIS 2101 at *3 (Bankr. S.D.N.Y. Aug. 6, 2021).

As stated above, this court has recognized that the safe harbor defense does not apply to subsequent transfers. "By its terms, the safe harbor is a defense to the avoidance of the *initial transfer*." *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Secs. LLC (In re Madoff)*, 594 B.R. 167, 197 (Bankr. S.D.N.Y. 2018). This Court declines to reconsider this issue.

Regarding the argument that Fairfield Sentry is a mere conduit and Defendants are initial transferees, affirmative defenses in a motion to dismiss must be based on the pleadings. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). There are no allegations on the face of the complaint to support Defendants' assertion that Fairfield Sentry is not the initial transferee. Regardless, this court has already determined that the Fairfield Complaint contains sufficient allegations of Fairfield Sentry's actual knowledge to defeat the safe harbor defense on a Rule 12(b)(6) motion. The Trustee has pled this knowledge in two ways: 1) that certain individuals had knowledge of Madoff's fraud, which is imputed to the Fairfield Funds; and 2) that actual knowledge is imputed to the Fairfield Funds through "FGG," an alleged "de facto" partnership. Given this knowledge, Fairfield Sentry cannot raise the safe harbor defense.

The Defendants have also raised the safe harbor defense in connection with their contracts with Fairfield Sentry. "Whether the safe harbor defense applies to the initial transfers under the theory that BLMIS' transfers to Fairfield Sentry were made in connection with Defendants … is not answerable on the pleadings." *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 2023 Bankr. LEXIS 26, at *30 (Bankr. S.D.N.Y. Jan. 6, 2023). The district court has already held that this is a fact-specific inquiry and the Court should make such a determination with the benefit of a "full factual record."

### III.    Good Faith, For Value

Defendants argue that the Trustee cannot recover funds received in good faith and for value under Section 550(b) on the Bankruptcy Code.  (Defs.' Joint Mot. Dismiss 15, ECF No. 102).  The Trustee argues that the good faith affirmative defense is premature and cannot be resolved at the pleading stage.  (Opp'n 29, ECF No. 106).

Where a transferee should have known of the fraud, the transferee will be deemed to have taken the assets in bad faith, unless an investigation into the debtor's financial condition would not provide reason to suspect financial trouble.  The District Court recently found that good faith is a fact-intensive inquiry that is often more appropriate for trial.  "The Second Circuit made clear in its decision in [*Picard v.*] *Citibank*[, *N.A. (In re BLMIS)*, 12 F.4th 171 (2d Cir. 2021), *cert. denied* 142 S. Ct. 1209, 212 L. Ed. 2d 217 (2022)] that the inquiry notice standard requires a 'fact-intensive inquiry to be determined on a case-by-case basis, which naturally takes into account the disparate circumstances of differently-situated transferees.'" *In re Bernard L. Madoff Inv. Sec. LLC*, Dec. & Order, 20-cv-02586(CM), 2022 U.S. Dist. LEXIS 79362 (May 2, 2022).

Both "value" and "good faith" are Defendants' burden to prove.  *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Secs. LLC (In re Madoff)*, 594 B.R. 167, 198 (Bankr. S.D.N.Y. 2018).  Defendants are free to plead and prove this defense at a later stage of litigation.

## <u>Conclusion</u>

For the foregoing reasons, the Defendants' motion to dismiss is denied.  The Trustee shall

submit a proposed order within fourteen days of the issuance of this decision, directly to

chambers (via E-Orders), upon not less than two days' notice to all parties, as required by Local

Bankruptcy Rule 9074-1(a).



**/s/ Cecelia G. Morris**

**Dated: April 25, 2023**
**Poughkeepsie, New York**

_____
**Hon. Cecelia G. Morris**
**U.S. Bankruptcy Judge**